JOHN J. POWER v. P. F. KING.

Opinion filed March 11, 1909.

**Deeds — Capacity of 'Grantor — Intoxication.**

1. Before a deed or other contract will be set aside on the ground of the intoxication of the grantor or maker when the same was executed, the evidence .must show that the grantor was in such a degree of intoxication at the time as to render him entirely incapable of understanding the nature and effect of the transaction.

**Costs — Attorney's Fees.**

2. It is error to tax an attorney's fee in an equitable action under section 7179, Rev. Codes 1905.

**Deeds — Evidence — Intoxication of Grantor.**

3. Evidence considered, and *held* to show that plaintiff was not rendered incompetent to enter into the contract involved in this action by reason of his intoxication.

Appeal from District Court, 'Ward county; *Goss,* J.

Action by John J. Power against P. F. King.

Judgment for defendant. Plaintiff appeals.

Modified and affirmed.

*Bosard & Ryerson,* for appellant.

*John E. Greene, Gray & Gray,* and *Ben E. Combs,* for respondent.

MORGAN, C. J. This is an action to set aside a deed, a contract for the purchase of 160 acres of land, and a promissory note executed by the plaintiff on the 20th day of May, 1907. The facts, as shown by the record, are the following in substance: On the 20th day of May, 1907, the plaintiff and defendant met at Donnybrook, Ward county, N. D., and, after certain preliminary negotiations, agreed that the plaintiff would purchase 160 acres of land from the defendant, and that the defendant would purchase two lots in Donnybrook from the plaintiff. The consideration agreed upon for the land was the sum of $2,000. The plaintiff was to convey to the defendant the two lots at the agreed price of $500, and the plaintiff was to execute a promissory note for the sum of $1,500, and deliver the same to the defendant, and this note was to be secured by a mortgage to be executed by the plaintiff and his wife upon 160 acres of land. These papers were all signed by the plaintiff, and

were turned over to one Freeman, who sent them to a bank at Mohall, where the signature of the plaintiff's wife was to be procured to the mortgage and to the deed of the lots in Donnybrook. After these papers were sent to the bank at Mohall, and when the attention of the plaintiff was called to the fact that his wife's signature was to be procured, he repudiated the transaction entirely and refused to permit his wife to sign the same. Within a few days he brought this action to cancel and annul the deed and contract that had been signed by him, and to have them surrendered to him. After a trial the district court made findings of fact and conclusions of law in favor of the defendant, and refused to cancel the deed and other contracts, and granted the affirmative relief asked by the defendant for the specific performance of the contract that was entered into between the plaintiff and the defendant on Monday, May 20th. The plaintiff has appealed from the judgment of the district court, and asks for a review of the entire evidence under section 7229, Rev. Codes 1905.

The sole issue is whether the plaintiff was in such a state of intoxication at the time of the execution of these papers that he was incapable of understanding the nature and effect of the contract entered into at that time. The record shows, and it may be conceded, that Mr. Power had been drinking excessively on the Sunday prior to the making of the contract; but that fact does not alone warrant the setting aside of the contract executed by him about 10 o'clock of Monday morning. The evidence does not show that he drank anything prior to the signing of the papers on Monday. There is ample evidence that he drank heavily on that day after he left the bank where the contract was closed, so far as it was possible for him to close it on that day. The fact that he became intoxicated later in the day has no direct bearing on the issue as to his condition when he executed the note, deed and contract for the purchase of the 160 acres of land. The evidence of the plaintiff shows that he began to drink whiskey on Saturday about 7 o'clock p. m. at Minot. He left Minot for Donnybrook sometime during Saturday night and arrived at Donnybrook early Sunday morning. Some time after his arrival there he procured a pint or half pint of whiskey and drank some of it. After drinking this whiskey he testifies that he had no definite recollection of anything that transpired in Donnybrook until Wednesday morning. He has no recollection whatever of being in the bank where the papers were executed, or having talked with, or of doing any business with, the

defendant there. The defendant, the cashier of the bank, the keeper of the hotel where plaintiff stayed, and some of the boarders at the hotel were witnesses at the trial, and testified to his condition as to intoxication on Monday before and after the signing of the deed and other papers. From the testimony of these witnesses it is evident that he drank whiskey excessively on Sunday up to midnight, and on Monday afternoon and Tuesday. From this testimony, so far as facts are related, and not as conclusions, we think that it was clearly shown that he was not incompetent at that time to transact business, that he did transact by reason of having been under the influence of strong drink on the previous night.

In Spoonheim v. Spoonheim, 14 N. D. 380, 104 N. W. 845, the rule was laid down that, before a deed executed by a person while in a state of intoxication would be set aside on that ground, it must be shown that the grantor was so intoxicated as to be incapable of understanding the nature and effect of the transaction. In that case the following rule is laid down in 17 A. & E. Enc. Law, p. 401, was adopted: "Where a person seeks to avoid responsibility for a contract on the ground of intoxication alone, it must appear that the drunkeness was so excessive that he was utterly deprived of the use of his reason and understanding, and was altogether incapable of knowing the effect of what he was doing. Any degree of intoxication which falls short of this will furnish no ground for release, in the absence of fraud on the part of the other contracting party." Tested by this rule, we deem it clearly shown that the plaintiff was competent to execute the papers, and did fully understand their legal character and effect.

There is no claim of fraud or imposition against the defendant. The evidence is conflicting as to the value of the land and as to the value of the lots. The plaintiff claims that the lots are worth more than $500—the price agreed upon by him in the trade —and that the land is worth less than the price fixed. The trial court found the lots to be of the value of $300 and the land of the value of $1,700. These findings are sustained by the evidence, and accord with our conclusions as to the value of the property after a careful perusal of the evidence.

The trial court ordered the costs and disbursements of the action to be taxed in favor of the defendant, and an attorney's fee of $75 was ordered taxed against the plaintiff in addition to the costs and disbursements. This was error. There is no provision in the

statute authorizing the taxation of an attorney's fee in a case of this kind. Under section 7179, Rev. Codes 1905, the costs might have been taxed against the plaintiff in the discretion of the court. This identical question has been recently decided by this court in Engholm v. Ekrem (N. D.) 119 N. W. 35.

The judgment will be ordered modified by striking therefrom the $75 allowed as attorney's fees, and, as modified, the judgment is affirmed, with costs against the appellant.

Modified and affirmed. All concur.